1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9                    **DISTRICT OF NEVADA**
10
11  WILLIAM BICKOM,                    )
12                Petitioner,          )        2:10-cv-00328-PMP-GWF
13  vs.                                )
14  DWIGHT NEVEN, *et al.,*            )        **ORDER**
15                Respondents.         )
16  _____ /

17          This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a Nevada

18  state prisoner represented by counsel.  Before the court is respondents' answer to the petition (ECF #15).

19  Petitioner filed a reply (ECF #19).

20  **I. Background**

21          On October 6, 1999, officers of the Las Vegas Metro Police Department ("LVMPD")

22  served a search warrant at an apartment at 1831 Castleberry, Las Vegas, Nevada (exhibit 7 to petition,

23  at 150-152).[1]  A search of the interior was conducted and petitioner's co-defendant Lisa Gill was taken

24  into custody (*id*. at 155).  Inside the apartment, methamphetamine and common components of a

25

26          [1] Unless otherwise stated, all exhibits referenced in this order are exhibits to the petition (ECF
    #5) and may be found at ECF # 1.

1   methamphetamine lab were found (*id*. at 166).  Methamphetamine (48.4 grams) was found in a purse

2   claimed by Lisa Gill (*id*. at 177).  Methamphetamine (58.6 grams) was also found in a night stand in the

3   bedroom (*id*. at 183).  The amounts are above what is considered the normal amount kept for personal

4   use (*id*. at 177).

5         In the same night stand where methamphetamine was found, paperwork bearing

6   petitioner's name was found (*id.* at 184).  The paperwork included a Department of Motor Vehicles

7   receipt from 1985, a vehicle registration dated 1987, and a receipt for motorcycle repairs dated less than

8   a month prior to the search, September 20, 1999 (*id*. at 235-237, 249).  Men's and women's clothing was

9   found in the apartment, and police conducting surveillance had seen petitioner walking in and out of the

10  apartment (*id*. at 247; ex. 8 at 14).  A crime scene analyst lifted a fingerprint from a 1000 milliliter flask

11  that was later identified as petitioner's (ex. 8 at 78).

12  **II.  Procedural Background**

13        The Clark County Justice Court held a preliminary hearing on May 11, 2000 (ex. 2).  One

14  witness, a LVMPD narcotics detective, testified.  The court granted petitioner's motion to dismiss,

15  concluding that the State was without sufficient evidence to pursue the charges against him (*id*. at 37).

16        On June 13, 2000, the State presented evidence against petitioner and co-defendant Gill

17  to a grand jury (ex. 3).  Five witnesses testified for the State.  The grand jury returned an indictment

18  against both defendants (*id*.).  Petitioner was charged by way of indictment with count I:  trafficking in

19  controlled substance; and count II: manufacture or compounding a controlled substance (ex. 4).

20        Petitioner filed a motion to sever and to continue the trial, or in the alternative a motion

21  *in limine* regarding statements by the co-defendant (ex. 5).  At a hearing on the motion, the trial court

22  denied the motion to sever but agreed that certain statements would be excluded (ex. 7 at 4, 8).  At that

23  hearing, trial counsel also moved for a continuance, arguing that he did not know that the flask with

24  petitioner's fingerprint was recovered from the apartment and not from Gill's storage unit (*id*. at 5-8).

25  The State opposed, and the court denied the motion (*id*. at 8).

26

1       The State filed an amended indictment on June 23, 2004 (ex. 6).  Petitioner was convicted

2 by a jury and sentenced on August 30, 2004 as follows: 10-25 years for trafficking in a controlled

3 substance; and 3-15 years to run concurrently for manufacture or compounding a controlled substance

4 (ex.'s 9, 10).  The judgment of conviction was filed on September 25, 2004 (ex. 10).

5       Petitioner appealed (ECF #9, ex. 36).  The Nevada Supreme Court entered its order of

6 affirmance on January 11, 2006 (ex. 11).  Petitioner filed a proper person petition for a writ of habeas

7 corpus in state district court on April 14, 2006 (ex. 12).  Counsel was appointed to represent petitioner,

8 and she filed a supplemental postconviction petition (ex. 13).  The state district court held a hearing and

9 then took the matter under consideration (ex. 16).  The court denied the petition in a minute order on

10 November 13, 2006 (ex. 17).  On December 1, 2006, the State filed the Findings of Fact, Conclusions

11 of Law and Order (ex. 18).  The Nevada Supreme Court affirmed in part, denied in part, and remanded

12 the matter to state district court on October 8, 2007 (ex. 23).

13       Upon remand, the state district court conducted an evidentiary hearing on February 5,

14 2008 (ex. 25).  The district court denied the petition and the Findings of Fact, Conclusions of Law and

15 Order, prepared by the State, were filed on April 21, 2008 (ex. 26).  The Nevada Supreme Court

16 affirmed on January 27, 2009 (ex. 31).

17       The Nevada Supreme Court denied petitioner's motion for rehearing on March 12, 2009

18 (ex. 33) and denied his petition for reconsideration en banc on April 22, 2009 (ex. 35).

19       On March 9, 2010, petitioner submitted this federal petition for writ of habeas corpus to

20 the court (ECF #5).  On February 15, 2011, the court granted in part and denied in part respondents'

21 motion to dismiss, dismissing grounds 5, 9 and 11 (ECF #11).  Respondents have answered and argue

22 that the remaining grounds lack merit and that the petition should be denied (ECF #15).  Petitioner

23 replied (ECF #19).

24

25

26

**III.  Legal Standards**

> ### A.      Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999).  Therefore, this court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

4

of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective

standard of reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).  If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . . through the 'deferential lens of § 2254(d).'"  *Id.* at 1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen*, 131 S.Ct. at 1398-1401.

**IV.  Instant Petition**

**A.  Ground 1**

Petitioner alleges the following: his rights under the Fifth, Sixth and Fourteenth Amendments were violated when (a) the State filed a faulty amended indictment that violated his rights to fair notice of the criminal charges and against double jeopardy; (b) his trial counsel rendered ineffective assistance when he failed to object to the faulty amended indictment; and (c) his appellate counsel rendered ineffective assistance when she failed to raise this issue on appeal (ECF #5 at 7-8).

In Nevada, an indictment may be amended at any time before the jury returns a verdict, so long as "no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."  NRS 173.095(1).  The application of NRS 173.095 is a question of state law.  Alleged errors in the interpretation or application of state law do not warrant habeas relief.  *Hubbart v. Knapp*, 379 F.3d 773, 779-780 (9th Cir. 2004).  "Federal habeas corpus relief does not lie for errors of state law . . . it is not the province of a federal habeas court to reexamine state-court determinations on state-law

6

questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quotations and internal citations omitted).

Accordingly, as ground 1 states no cognizable federal claims, it is denied. Even if this court considered the merits of these claims, they would fail. The original indictment read: "Defendants did then and there wilfully, unlawfully and feloniously manufacture or compound, or offer or attempt to manufacture or compound, a controlled substance, to-wit, Methamphetamine, or did possess a majority of the ingredients required to manufacture or compound said controlled substance" (ex. 4). At trial the State filed an amended indictment which eliminated the alternate theory of "possess[ing] a majority of the ingredients required to manufacture or compound said controlled substance" (ex. 6). The State amended the indictment in response to *Sheriff v. Burdg*, in which the Nevada Supreme Court held that NRS 453.322(1)(b) (providing that it is unlawful for a person to "[p]ossess a majority of the ingredients required to manufacture or compound a controlled substance . . . .") was facially vague and therefore unconstitutional. 59 P.3d 484, 488 (Nev. 2002).[2]

Petitioner argues that his constitutional rights were violated when the State amended the indictment to exclude an alternative theory on which the grand jury likely returned its indictment, based upon the lack of evidence with which to conclude that petitioner manufactured methamphetamine other than by possessing the elements, and when the eliminated theory was deemed unconstitutionally vague by the Nevada Supreme Court (ECF #5 at 8). Respondents argue that the indictment was narrowed because a potential theory of criminal liability was removed and that the Nevada Supreme Court's holding was not contrary to or an unreasonable application of clearly established federal law (ECF #15 at 8-9).

While the settled federal rule is that an indictment may not be amended except by re-submission to the grand jury, *Russell v. United States*, 369 U.S. 749 (1962), a couple of exceptions have been recognized. One permissible exception is a narrowing of an indictment when, for example, a single count of an indictment charges more than one way of committing an offense and the indictment is physically amended to charge only one. *United States v. Miller*, 471 U.S. 130, 140-145 (1985); *Ford*

---

[2] The Nevada Legislature subsequently amended NRS 453.322(1) in 2003.

1  *v. United States*, 273 U.S. 593 (1927); *see also U.S. v. Leichtnam*, 948 F.2d 370, 377 (7th Cir. 1991) (an

2  amendment where "[n]o offense not charged in the original indictment has been added, and no possible

3  basis for conviction not contained in the original indictment has been created" is a permissible

4  amendment).

5  The Ninth Circuit has held that an indictment may not be broadened by either literal or

6  constructive amendment.  *U.S. v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002).  "An amendment of the

7  indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by

8  the prosecutor or court after the grand jury has last passed upon them."  *Id.* (quotations omitted).  Courts

9  have found constructive amendment "where (1) there is a complex of facts [presented at trial] distinctly

10 different from those set forth in the charging instrument, or (2) the crime charged [in the indictment] was

11 substantially altered at trial, so that it was impossible to know whether the grand jury would have

12 indicted from the crime actually proved."  *Id.* at 615.

13 The Nevada Supreme Court concluded that petitioner failed to demonstrate that the

14 "complex of facts" presented at trial was distinctly different from those set forth in the indictment, the

15 crime charged in the indictment was altered, or the evidence presented to the grand jury was insufficient

16 to sustain the indictment on the theory that he manufactured methamphetamine (ex. 23 at 4).  The

17 Nevada Supreme Court also noted that petitioner was tried and convicted by a jury under a much higher

18 burden of proof than was required for the grand jury to return an indictment.  *See also U.S. v. Mechanik*,

19 475 U.S. 66, 73 (1986); *U.S. v. Navarro*, 608 F.3d 529, 538-539 (9th Cir. 2010) (errors in grand jury

20 proceeding are typically harmless once a guilty verdict is rendered).  Thus, the Nevada Supreme Court

21 also determined that petitioner failed to demonstrate that he was prejudiced by trial counsel's failure to

22 object to the amended indictment or appellate counsel's failure to raise this issue (ex. 23 at 4, 8).

23 Ground 1 fails to state federally cognizable claims and is denied.  Even if the court

24 addressed the merits, the Nevada Supreme Court's conclusions described above are not objectively

25 unreasonable.  Accordingly, ground 1 is denied in its entirety.

26

1     **B. Ground Two**

2           Petitioner claims his trial counsel was ineffective by (1) failing to understand the evidence

3     prior to trial; (2) failing to fully discuss a plea offer with petitioner; (3) failing to prepare petitioner to

4     testify; and (4) eliciting damaging testimony (ECF #5 at 9-11).

5           First, petitioner argues that trial counsel was ineffective when he failed to recognize that

6     a 1000 milliliter flask on which a fingerprint identified as petitioner's was discovered at the 1831

7     Castleberry apartment and not at co-defendant Gill's storage unit (ECF #5 at 9). Petitioner contends that

8     if counsel knew that the flask came from the apartment he would have negotiated a more favorable

9     outcome, rather than proceeded to trial on the incorrect belief that the State had little or no evidence

10    against petitioner (*id.*).

11          On the morning of the first day of trial, counsel filed a motion to suppress the evidence

12    of the fingerprint on the flask because it was "new evidence" and the State failed to comply with NRS

13    174.234 and NRS 174.295 (ex. 5). Counsel argued that the introduction of the fingerprints was "trial

14    by ambush" and that he was standing in court with his "pants around [his] ankle" because he did not

15    know the flask came from the apartment before trial (ex. 7 at 7). The State countered that counsel

16    should have known the flask was recovered at the apartment, and in fact, several pieces of evidence in

17    pretrial discovery showed that the flask was recovered from the apartment (*id*; ex. 13-C, D). Ample

18    evidence was also presented during the grand jury proceedings to show that the flask was found at the

19    apartment (ex. 3 at 25-26, 32-33).

20          Trial counsel has a "duty to make reasonable investigations or to make a reasonable

21    decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also*

22    *Douglas v. Woodford*, 316 F.3d 1079, 1089 (9th Cir. 2003) ("counsel must, at a minimum, conduct a

23    reasonable investigation enabling him to make informed decisions"), quoting *Sanders v. Ratelle*, 21 F.3d

24    1446, 1456 (9th Cir. 1994).

25          The Nevada Supreme Court initially remanded this claim to the state district court,

26    determining that petitioner was entitled to an evidentiary hearing (ex. 23 at 7). Upon the subsequent

9

appeal, the Nevada Supreme Court affirmed the denial of this claim, reasoning:

> During the evidentiary hearing, the district court heard testimony that defense counsel believed that the State's constructive possession case against his client was weak because the paperwork that placed [petitioner] in the residence was 15 years old, there were no reported eyewitnesses who could place [petitioner] in the residence, and the State's only piece of direct evidence was a fingerprint on a flask that was recovered from the codefendant's storage unit.  However, immediately prior to trial, defense counsel learned that the flask had been recovered from the residence and not the storage unit.  Defense counsel moved for a continuance based on this fundamental change in the state of the evidence, but the district court denied the motion.  During the trial, defense counsel began negotiations with the State, the State extended a plea offer, and defense counsel advised [petitioner] to take the offer.  The district court had a policy that if an individual was not in custody at the time he entered his guilty plea to a crime that carried a mandatory sentence it would remand the individual to custody at the time the plea was entered.  Defense counsel asked the district court about the policy and argued that it should not apply in petitioner's case.  However, the district court was not willing to waver from its policy.  Petitioner was not in custody, and he did not want to be remanded to custody, so he did not take the State's offer.

> We conclude that [petitioner] has not demonstrated that defense counsel's performance was prejudicially inadequate or that the district court's factual findings are clearly wrong.

(Ex. 31 at 5-6).

Respondents argue that the Nevada Supreme Court's determination was not an unreasonable application of *Strickland* (ECF #15 at 10).

Petitioner argues that the Nevada Supreme Court failed to address the components of deficient performance or prejudice under *Strickland* and that its ruling was therefore an unreasonable application of *Strickland* (ECF #19 at 14).  This court disagrees.  The Nevada Supreme Court's reasoning, as quoted above, indicates that it concluded that petitioner was not prejudiced by any ineffective assistance of counsel vis-a-vis the flask.  At the evidentiary hearing, the district court found that once counsel realized that the flask was from the apartment, he negotiated a plea deal of 30-96 months that he advised his client–who faced a potential sentence of 10-25 years–to accept.  While trial counsel testified at the evidentiary hearing that he did not recall petitioner rejecting the plea agreement because he did not want to be remanded into custody, prosecutors as well as co-defendant's counsel testified that petitioner rejected the offer because he did not want to be taken into custody following the

entry of the plea (ex. 25 at 25-26, 32).  The Nevada Supreme Court's conclusion that petitioner did not suffer prejudice because trial counsel was still able to secure a plea agreement that was far more favorable than the sentence he faced at trial is not unreasonable.  Accordingly, this first part of ground 2 is denied.

Second, petitioner alleges that counsel failed to fully discuss with him the plea offer that the State presented just prior to the start of the second day of trial (ECF #5 at 10).  The State proposed that petitioner plead to one count of trafficking in a controlled substance, with both parties stipulating to a sentence of 30-96 months in prison (ex. 13-P).

The plea bargaining process is a critical stage of the prosecution during which a defendant is entitled to the effective assistance of counsel.  *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012).  Counsel is required to communicate the terms of a plea offer to a defendant and to ensure that the defendant understands the terms of the offer and its significance.  *United States v. Rivera-Sanchez*, 222 F.3d 1057, 1060-1061 (9th Cir. 2000).  A strong presumption exists that counsel's performance falls within a range of reasonable assistance.  *United States v. Rogers*, 769 F.2d 1418, 1424 (9th Cir. 1985).  There is no ineffective assistance of counsel where there is no showing of what any deficient consultation missed.  *Id*. at 1425.

Petitioner argues as follows: trial counsel was ineffective when he did not have time to discuss the plea agreement fully with petitioner, and therefore, petitioner did not understand the terms of the offer (ECF #19 at 16).  Counsel testified at the evidentiary hearing that the trial judge prevented him from adequately reviewing the plea agreement with petitioner (ex. 25 at 9).  Trial counsel testified that he requested additional time to go over the plea agreement, but the trial court denied that request (*id*.).  Counsel testified that if he had been allowed sufficient time to review the plea agreement with petitioner he would have advised petitioner to take the deal (*id*. at 11).  Trial counsel did not object on the record (or make any record at all) to the trial court's denial of his request for additional time

1   (ECF #19 at 16).  Respondents contend that the Nevada Supreme Court's decision that petitioner failed

2   to demonstrate that his counsel's performance was prejudicially inadequate is not objectively

3   unreasonable (ECF #15).

4            The Nevada Supreme Court affirmed the district court's denial of this claim as set forth

5   above.  That court concluded that the state district court did not err in finding that petitioner rejected the

6   offer because he did not want to be remanded into custody.  Thus the court reasoned that petitioner failed

7   to demonstrate that his counsel's performance was prejudicially inadequate (ex. 31 at 5-6).  The Nevada

8   Supreme Court's conclusion that petitioner did not suffer prejudice because he rejected the plea so as

9   not to be taken into immediate custody is not unreasonable.  Accordingly, this second part of ground 2

10  is denied.

11           Third, petitioner argues the following: trial counsel failed to adequately prepare him to

12  testify at trial (ECF #5 at 10-11).  Counsel first discussed the option of petitioner testifying during the

13  lunch break on the second day of trial (ex. 13-Q).  Petitioner testified that same afternoon; because he

14  was unprepared, he testified to several harmful facts, including that he and the co-defendant had lived

15  together "forever" and that they had lived together in 1999 (when the Castleberry apartment was

16  searched), although he denied that they had ever lived together at the 1831 Castleberry apartment (ex.

17  8 at 147-148).  Counsel's ineffective questioning also gave rise to the impression that petitioner

18  misrepresented his prior conviction for possession of a controlled substance with intent to sell as a

19  conviction for only possession (*id*. at 132, 145-146).

20           Respondents argue the following:  petitioner made damaging statements on direct

21  examination after being warned of the dangers of testifying, including cross examination and admission

22  of prior convictions.  Petitioner fails to specify what preparation could have been made to enable him

23  to avoid answering questions truthfully, either on direct or cross.  Whether petitioner lived in the

24  apartment was obviously an issue, and cross examination would have explored that issue to petitioner's

25  detriment (ECF #15 at 12).

26

1    Damaging admissions made by a defendant do not necessarily rise to the level of

2  ineffective assistance of counsel in preparation.  *See Carpenter v. Vaughn*, 296 F.3d 138, 152 (3rd Cir.

3  2002) (". . .some of the damaging testimony . . . would very likely have come out on cross-examination

4  even if Carpenter's testimony had been presented in a closely controlled question-and-answer form.").

5  To state a claim for relief, a petitioner must "indicate how additional preparation would have enhanced

6  his testimony."  *U.S. v. Mealy*, 851 F.2d 890, 909 (7th Cir. 1988).

7    In affirming the district court, the Nevada Supreme Court stated that the district court had

8  informed petitioner of his right not to testify and warned him that if he did testify that he would be

9  subject to cross-examination and he could be asked whether he had been convicted of a felony, the

10  nature of the felony, and when the felony occurred.  The Nevada Supreme Court also pointed out that

11  petitioner failed to articulate with specificity how counsel should have prepared him for the witness

12  stand.  Thus, the Nevada Supreme Court concluded that petitioner failed to demonstrate that he was

13  prejudiced by trial counsel's performance (ex. 23 at 4-5).

14    Again, the primary question when reviewing a claim of ineffective assistance of counsel

15  is not whether counsel provided ineffective representation or whether the state court erred in its analysis

16  of the claim.  *Schriro v. Landrigan*, 550 U.S. 465, 472 (2007).  The primary issue is whether the state

17  court adjudication was unreasonable.  *Id.*; Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d

18  914 (2002). This court owes a great level of deference to the state court adjudication. *Yarborough v.*

19  *Gentry*, 540 U.S. 1, 5–6 (2003).  Because counsel has wide latitude in deciding how best to represent

20  a client, review of counsel's representation is highly deferential.  *Id*.  Review is "doubly deferential when

21  it is conducted through the lens of federal habeas."  *Id*. at 6.  The Nevada Supreme Court's conclusion

22  that petitioner failed to demonstrate prejudice due to counsel's failure to adequately prepare him to

23  testify is not unreasonable.  Accordingly, this third portion of ground 2 is denied.

24    Finally, petitioner argues that his counsel rendered ineffective assistance when he elicited

25  testimony that was harmful to petitioner by ineffectively questioning petitioner about a prior conviction

26  and when he cross-examined a police officer about prior bad acts by petitioner that had not been the

13

subject of any previous testimony (ECF #s 5 at 11; 19 at 18-21 ).  Petitioner contends that while counsel purportedly sought to introduce evidence that petitioner had been beaten up by narcotics officers prior to his arrest, such evidence was irrelevant to the facts of the case and did not provide a viable defense. Respondents argue that the Nevada Supreme Court's affirmance of the denial of this ground based on their determination that counsel's decisions were tactical was not an objectively unreasonable application of *Strickland* (ECF #15).

Generally, matters of strategy are left to the discretion of trial counsel.  *Harrington v. Richter*, 131 S.Ct. 770, 788-89 (2011).  "Some strategy decisions, however, are so unreasonable that they can support a claim of ineffective assistance of counsel."  *U.S. v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001); *see also U.S. v. Span*, 75 F.3d 1383, 1389-91 (9th Cir. 1996).

In this case, during direct examination of petitioner, counsel asked his client whether he had been "charged with and convicted of using methamphetamine," and petitioner admitted it (ex. 8 at 132).  However, as the State pointed out during cross-examination, petitioner actually pled guilty to possession of methamphetamine with intent to sell (*id*. at 145-46).

Additionally, during the cross-examination of a police officer, trial counsel noted that the officer's report stated that petitioner had made several statements claiming that the money recovered from the apartment was derived from the sale of narcotics, despite the fact that the State never elicited this testimony from any of its witnesses (*id*. at 123-24).  Petitioner's counsel pointed out during the trial that such purported statements by petitioner were "damning" and "basically a confession" (*id*. at 123). Trial counsel also elicited other harmful testimony regarding petitioner's prior bad acts when he asked the officer about a time when he met with an informant and petitioner.  The officer testified that petitioner brought "an additional amount of narcotics" to the meeting, "a large amount" (*id*. at 125-26). On redirect examination, the officer testified that he had not mentioned the drug exchange with petitioner in his direct testimony because "I can't by law mention other bad acts in my testimony.  At least I think that's correct."  To which the court responded: "Unless they ask you which they did" (*id*. at 129).

14

1    The state district court denied an evidentiary hearing on this issue (ex. 18).  The Nevada

2    Supreme Court affirmed the denial of this ground, reasoning that counsel's questions were "tactical in

3    nature," and that he was not ineffective (ex. 23 at 5).  The Nevada Supreme Court concluded that the

4    record indicated that petitioner's theory of defense was the he was a low-level methamphetamine user

5    that police hoped would cooperate, the police roughed up petitioner to obtain his cooperation, and the

6    police falsified reports when petitioner refused to cooperate (*id*.).  The Nevada Supreme Court observed

7    that "tactical decisions are virtually unchallengeable absent extraordinary circumstances" and determined

8    that petitioner had failed to present any extraordinary circumstances (*id*. at 6, quoting *Howard v. State*,

9    800 P.2d 175, 180 (Nev. 1990)).

10   While petitioner's trial counsel may have elicited damaging testimony, the Nevada

11   Supreme Court's conclusion that counsel's decisions were tactical and meant to serve the theory that

12   petitioner was a low-level drug user and that petitioner failed to demonstrate extraordinary circumstances

13   is not an objectively unreasonable application of *Strickland*.  Accordingly, this portion of ground 2 is

14   denied, and ground 2 is denied in its entirety.

15                    **C. Ground Three**

16   Petitioner claims that the trial court's failure to grant his motion for a mistrial violated

17   his rights to cross-examination and confrontation under the Sixth and Fourteenth Amendments (ECF

18   #5 at 12).  He alleges the following: the prosecution deliberately violated the protections recognized in

19   *Bruton v. U.S.*, 391 U.S. 123 (1968), when it elicited a hearsay statement from a narcotics officer that

20   co-defendant Gill told him that she was holding car titles in her purse for petitioner as collateral for

21   money owed to him for drugs.  The trial court erred by denying trial counsel's motion for a mistrial, and

22   the error was not harmless (ECF #5 at 12; pet. Ex. 7 at 253).  Respondents argue that the Nevada

23   Supreme Court's affirmance of the denial of this ground cannot be said to be contrary to clearly

24   established United States Supreme Court law, nor is it an objectively unreasonable application of

25   *Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (ECF #15 at 13).

26

1    The constitutional right of a defendant to be confronted by the witnesses against him is

2  a "bedrock procedural guarantee [which] applies to both federal and state prosecutions." *Crawford v.*

3  *Washington*, 541 U.S. 36, 42 (2004) (internal citations and quotations omitted).  Where an accomplice

4  has made incriminating statements to the police, the accomplice's statements cannot be admitted at trial

5  where the accused has no meaningful opportunity to confront or cross-examine the accomplice.  *Bruton*

6  *v. U.S.*, 391 U.S. 123, 126-28 (1968); *see also Crawford*, 541 U.S. at 53 ("even if the Sixth Amendment

7  is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law

8  enforcement officers fall squarely within that class").

9    However, *Richardson v. Marsh* later limited *Bruton* when it considered a situation where

10  an accomplice's statement did not "express[ly] implicate[] the defendant as his accomplice" and where

11  the statement was "not incriminating on its face, and became so only when linked with evidence

12  introduced later at trial." *Richardson v. Marsh*, 481 U.S. 200, 208 (1987).  The *Richardson* Court held

13  that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's

14  confession with a proper limiting instruction when the confession is redacted to eliminate not only the

15  defendant's name, but any reference to her existence.  *Id*.

16    Here, during petitioner's trial, the State questioned the officer as follows:

17    DA:  Defense counsel has gone through some of those car titles with you.  They were
       found –where were those found?
18

      Officer:  In Ms. Gill's purse.
19
      DA:  Okay.  Do you recall defendant Gill making any sort of statement regarding those
20    titles?

21    Officer:  She stated she was holding them for Billy.

22    Petitioner's counsel:  Objection.  Outside the presence of the jury, judge.

23    Court:  That will be stricken.  The objection will be sustained.

24  The court did not contemporaneously instruct the jury to disregard this testimony (ECF #19-1, ex. 7A

25  at 247).  Jury Instruction 7, which explained the meaning of striking evidence, was  presented to the jury

26  prior to their deliberations (ECF #8-2, ex. A).  The jury previously had heard testimony that a notepad

16

and a receipt each bearing the name "Billy Bickom" had been found at the Castleberry apartment (ECF #19-1, ex. 7A at 192).

The Nevada Supreme Court relied on *Richardson* when it affirmed the denial of this claim. The court reasoned:

> In *Bruton*, the United States Supreme Court held that the admission of a co-defendant's confession inculpating the other defendant in a joint trial constituted a violation of the confrontation clause, and this violation could not be overcome by an instruction to the jury to disregard the statement.
>
> In this case, we disagree with [petitioner] that Gill's statement offended *Bruton*'s protective rule. Gill's statement is not a confession and not facially inculpatory because it does not expressly reference [petitioner William Bickom], only "Billy." Additionally, the criminal charges against [petitioner] did not directly involve the car titles, and only when linked with other evidence introduced at trial could the evidence be considered inculpatory. *See Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (recognizing that statement that is not facially incriminating but "became so only when linked with evidence introduced later at trial" does not amount to *Bruton* violation).

(Ex. 11 at 2-3). The court also determined that if there was any error, it was harmless (*id.* at 4).

Petitioner has failed to demonstrate that the Nevada Supreme Court unreasonably affirmed the district court's finding that the trial court denial of petitioner's motion for a mistrial for a *Bruton* violation did not violate his constitutional rights. While it may have been unreasonable for the Nevada Supreme Court to determine that the statement did not expressly reference the petitioner when it referenced "Billy," it was nevertheless not unreasonable to conclude that overall the statement that co-defendant was holding car titles for Billy was not facially inculpatory and had to be linked with other evidence in order to become so. Accordingly, ground 3 is denied.

### D. Ground Four

Petitioner alleges that the trial court's denial of the motion to sever violated his rights to due process, confrontation and cross-examination under the Fifth, Sixth and Fourteenth Amendments. (ECF #5 at 12-13. He argues the following: that he and his co-defendant presented antagonistic defenses and that he was prejudiced by the elicitation of incriminating information provided by the co-

defendant–who was not subject to confrontation or cross-examination (ECF #5 at 12-13; ECF #19 at 23). Petitioner argues that co-defendant's counsel elicited two hearsay statements that directly involved the charges against him:  the Castleberry apartment owner's hearsay statement that petitioner lived there– the only "adequate direct" evidence linking him to the apartment;  and co-defendant's hearsay statement that she was holding car titles in her purse for petitioner.   The latter statement in particular was deliberately elicited in order to establish that petitioner was a drug dealer and that the titles were collateral for money owned to petitioner for drugs purchased by others, which directly involved the charges against him (ECF #19 at 24).   Respondents contend that the Nevada Supreme Court's conclusions that the district court did not abuse its discretion and that no prejudice arose from the joint trial are not objectively unreasonable applications of federal law (ECF #15 at 14).

The United States Supreme Court has approved of joint trials on the basis that they play a vital role in the criminal justice system and promote efficiency. *Richardson v. Marsh*, 481 U.S. at 209-10.   While improper joinder does not, in itself, violate the Constitution, misjoinder may rise to the level of a constitutional violation if it renders the defendant's trial fundamentally unfair.   *U.S. v. Lane*, 474 U.S. 438, 446 (1986); *Williams v. Singletary*, 114 F.3d 177, 179 (11th Cir. 1997).

NRS 174.165(1) provides that the trial judge may sever a joint trial if "it appears that a defendant or the State of Nevada is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together."

A joint trial may be fundamentally unfair where co-defendants present mutually antagonistic defenses. *See Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990).   "To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant."   *U.S. v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996).   Severance should be granted where there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993).

1            Prior to the commencement of trial, the court granted petitioner's motion to exclude the

2  co-defendant's statement that petitioner lived in the Castleberry apartment (ex. 7 at 4).  However, co-

3  defendant's counsel cross-examined a police officer and deliberately elicited from him the apartment

4  owner's hearsay statement that petitioner lived there (ECF #19-1, ex. 7A at 216), and the district court

5  overruled petitioner's counsel's objection:

| | | |
|---|---|---|
| Counsel for Co-defendant: | Q: | Did you talk to or do any investigation to determine if [co-defendant] had any legal authority to be inside the residence? |
| Police Officer: | A: | I did. |
| | Q: | Okay.  And what did you come up with? |
| | A: | I talked to the owner of that property because this was an apartment basically that was leased as part of that property. |
| | Q: | Uh-huh. |
| | A: | And asked him who was supposed to be living there. |
| | Q: | And you were told? |
| | A: | I was told that [petitioner and co-defendant] lived there, but it's – |
| Counsel for petitioner: | | Objection, hearsay. |
| Court: | | You asked. |
| Counsel for petitioner: | | I didn't ask. |
| Court: | | Well, the other side asked.  Overruled. |

21  (ECF #19-1, ex. 7A at 216).

22  Also, as discussed in ground 3 above, the State deliberately elicited testimony from a police officer of

23  the co-defendant's hearsay statement that she was holding car titles in her purse for petitioner.

24            In affirming that the district court did not err when it denied the motion to sever, the

25  Nevada Supreme Court stated:

26                    In this case, [petitioner] has failed to show that the district court abused its discretion in denying his motion to sever.  The record indicates that

1

2

3

4

5

6

> [petitioner's and his co-defendant's] defenses were not mutually exclusive; both defense theories were similar, namely, that the police were sloppy in collecting evidence and failed to gather enough evidence to prove that [the co-defendants] were in constructive possession of the drugs. Additionally, although the district court denied the motion to sever, it granted [petitioner's] motion to exclude [his co-defendant's] statement to police that [petitioner] resided in the apartment thereby avoiding potential prejudice arising from the admission of [petitioner's] statements at a joint trial. Finally, [petitioner] has failed to show how he was prejudiced by [his co-defendant's] hostility towards [petitioner's] defense counsel. Accordingly, the district court did not err by refusing to sever the trial.

7   (ECF #11 at 5-6).

8         First, the record is devoid of any evidence that petitioner was prejudiced by his co-

9   defendant's hostility towards his counsel. Second, although the Nevada Supreme Court correctly

10  observed that the district court granted the motion to exclude co-defendant's statement to police that

11  petitioner lived at the apartment, the district court allowed the owner of the apartment's hearsay

12  statement in, over petitioner's counsel's objection. Because that hearsay statement was elicited by

13  counsel for co-defendant, it appears that the district court erred in permitting it over objection, and it was

14  clearly prejudicial.

15        However, even if the Nevada Supreme Court's conclusions were unreasonable, any error

16  is harmless. The State presented other evidence that petitioner lived at the apartment, namely, vehicle

17  registrations and repair receipts in his name and a notepad with his name written on it that appeared to

18  include a computer password–all recovered from a bedside night stand, as well as a flask recovered from

19  the apartment on which his fingerprint had been identified. Moreover, petitioner's testimony that neither

20  he nor his co-defendant lived in the apartment (contradicting other testimony that his co-defendant said

21  she lived there when police executed the search warrant), that he became friends with a couple who lived

22  there when he did handyman work in the apartment, that he had an absolutely no idea why his paperwork

23  was in their night stand, and his explanation that he might have handled the flask from which his

24  fingerprint was recovered when he hung some cabinets in the apartment were extraordinarily implausible

25  (ex. 8 at 145, 155-156, 158, 160). Accordingly, ground 4 is denied.

26

20

**E.  Ground Six**

Petitioner alleges that the trial court's admission of inadmissible hearsay evidence–the officer's testimony that the apartment owner told him petitioner and co-defendant lived there–violated his right to due process under the Fifth, Sixth and Fourteenth Amendments and his rights to cross-examination and confrontation under the Sixth and Fourteenth Amendments (ECF #5 at 14-15). Respondents contend that the Nevada Supreme Court's conclusion that the admission of the statement was harmless error is not objectively unreasonable (ECF #15 at 15).

The hearsay statement at issue is quoted above in the ground 4 discussion.  Confrontation Clause errors are subject to harmless error review. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). And, as explained, this court must defer to the Nevada Supreme Court's ruling unless it was objectively unreasonable. *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-1059 (9th Cir. 2005).

The Nevada Supreme Court agreed that the district court erred in admitting this statement, but determined that the error was

> harmless beyond a reasonable doubt because there was sufficient independent evidence that [petitioner] was a resident of the apartment.  In particular, Sergeant Faulis testified that it appeared that a man lived in the apartment because there were both men's and women's clothing in the closet found during the course of the search, and in conducting surveillance on the apartment, he had previously observed [petitioner] enter and exit the apartment numerous times.  Additionally, petitioner's fingerprint was found on a glass component of the methamphetamine lab and numerous pieces of paperwork bearing his name were found in a night stand drawer.  Finally, [petitioner] testified that he lived with his girlfriend and co-defendant Gill "forever," including in 1999, the same year that the Castleberry apartment was searched, and there was testimony presented at trial that Gill admitted to residing in the apartment.  In light of the overwhelming independent evidence that petitioner lived in the apartment, we conclude that any error in admitting the hearsay testimony was harmless beyond a reasonable doubt. *See Turner v. State*, 645 P.2d 971, 972 (Nev. 1982) ("Where the independent evidence of guilt is overwhelming, the improperly admitted evidence is harmless error and the resulting conviction will not be reversed.").

(Ex. 11 at 1-2).

This ground overlaps with ground 4 and must be denied on a similar basis.  The court notes that while petitioner did indeed testify that he and his girlfriend lived together "forever," including in 1999, he testified that they lived at a different address than the Castleberry apartment in 1999 (ex. 8 at 147).  Still, however, the Nevada Supreme Court's conclusion that the admission of this hearsay

statement was harmless error is not objectively unreasonable.  *See also* the discussion of ground 4, *supra* (it appears from the record that the jury did not credit petitioner's testimony, which was inherently implausible).  Accordingly, ground 6 is denied.

### F. Ground Seven

Petitioner claims that the prosecutor's misconduct when he commented on petitioner's failure to present evidence in support of his defense violated his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments (ECF #5 at 15-16; ECF #19 at 27-28).  Respondents argue that the Nevada Supreme Court's decision that the prosecutor's isolated statement did not rise to the level of improper argument that would justify reversal was not objectively unreasonable (ECF #15 at 16).

In reviewing prosecutorial misconduct claims, the narrow issue the federal habeas court may consider is whether there was a violation of due process, not whether there was misconduct under the court's broad exercise of supervisorial power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  It is "not enough that the prosecutors' remarks were undesirable or even universally condemned[,] [t]he relevant question is whether the prosecutor's comments so 'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (*quoting Darden*, 477 U.S. at 181).  The ultimate question before the court is not whether misconduct denied a fair trial, but whether the state court's resolution of the claim was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1).  *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999).  The court may consider whether the jury was instructed to decide solely on the basis of the evidence rather than counsel's arguments and whether the state's case was strong.  *Id.* (citing *Darden*, 477 U.S. at 182).

During closing arguments, the prosecutor stated:

> This is easy.  They are trying to confuse you saying oh, he was beaten up by police and this and that although with regard to being beaten up by the police, there's no evidence of that.  He brought no photos to show his injuries, he reported it to no one and today is the first time any of us have heard of this.
>
> Why would officers risk their careers to beat up this defendant?  And if they were

> going to, wouldn't they do a better job than just barely cutting him with a knife to the fact that he didn't even know he had been cut.  Why on earth would they do that.  There is no logical reason.

(Pet. Ex. 8 at 177).

The Nevada Supreme Court first observed that petitioner failed to object to the alleged instance of prosecutorial misconduct, which generally precludes appellate review absent plain or constitutional error (ex. 11 at 6-7, citing *Williams v. State*, 734 P.2d 700, 703 (1987).  That court then concluded that the prosecutor's statement was an isolated incident that in context did not even rise to the level of improper argument that would justify reversal (ex. 11 at 7).  The record demonstrates that this determination is not an unreasonable application of federal law.  The trial court instructed the jury that arguments of counsel are not evidence and that the jury was to base its verdict on evidence presented in court (ECF #8-2, ex. A).  The State's case–the evidence that petitioner resided in the apartment, that equipment to manufacture methamphetamine as well as substances that indicated that such manufacturing was in progress were recovered from the apartment, and the large amount of cash found hidden in the bathroom wall–was not weak.  *Darden*, 477 U.S. at 182.  Accordingly, ground 7 is denied.

### G.  Ground Eight

Petitioner alleges that his appellate counsel rendered ineffective assistance by (1) failing to file a petition for rehearing; and (2) failing to federalize several issues in the direct appeal (ECF #5 at 16-17).  Respondents argue that the Nevada Supreme Court's affirmance of the denial of each of these claims was not objectively unreasonable (ECF #15 at 17-18).

First, petitioner argues that his appellate counsel should have filed a petition for rehearing pursuant to Nevada Rule of Appellate Procedure 40 when the Nevada Supreme Court affirmed the denial of petitioner's direct appeal.  On direct appeal, petitioner alleged that there was insufficient evidence to prove that he lived at the Castleberry apartment, and therefore, there was insufficient evidence to convict him of trafficking and manufacturing methamphetamine (ECF #19 at 28).  In the order affirming petitioner's conviction, the Nevada Supreme Court noted that petitioner "testified that he lived with his

girlfriend and co-defendant Gill 'forever,' including in 1999, the year that the Castleberry apartment was searched, and there was testimony presented at trial that Gill admitted to residing in the apartment (ex. 11 at 2).

Petitioner testified:

Q:    Okay.  So your [sic] friends with [co-defendant]?

A:    Yeah.  She's my girlfriend.

Q:    Girlfriend, dating?

A:    Yeah.

Q:    Ever live together?

A:    Yeah.

Q:    When?

A:    Forever.

Q:    1999 living together?

A:    Yeah, we were living together in '99.

Q:    Okay.  Where were you living, what addresses?

A:    I had an address at 4905 Irene.

Q:    Is that your only one?

A:    That's the only one I had, except for when I stayed in my shed a couple of times.

Q:    Did she have another address?

A:    Yeah, I think she did.  She was living with a girlfriend of hers.  When we get in arguments and stuff, she'd go stay with–I can't remember her name.

(Ex. 8 at 147-148).  The Nevada Supreme Court rejected petitioner's claim that appellate counsel was ineffective for failing to file a petition for rehearing, concluding that their statement in their decision on his direct appeal accurately reflected petitioner's trial testimony, and thus petitioner did not demonstrate a reasonable probability of success in seeking rehearing (ex. 23 at 8).

As discussed in ground 6, above, the portion of this testimony quoted by the Nevada Supreme Court does not include petitioner's statement that he and the co-defendant did live together in

1   1999, but not at the Castleberry apartment.  Nevertheless, while the Nevada Supreme Court's excerpt

2   may be slightly misleading, as discussed above, there was substantial other evidence that petitioner lived

3   at the Castleberry apartment (police officer testified that it appeared that a man lived in the apartment

4   because there were both men's and women's clothing in the closet found during the course of the search,

5   and in conducting surveillance on the apartment, he had previously observed petitioner enter and exit

6   the apartment numerous times, petitioner's fingerprint was found on a glass component of the

7   methamphetamine lab and several pieces of paperwork bearing his name were found in a night stand

8   drawer) (ex. 7 at 184, 235-237, 246-247, 249; ex. 8 at 14, 78).  The Nevada Supreme Court's

9   determination that appellate counsel was not ineffective for failing to file a petition for rehearing was

10  not an objectively unreasonable application of *Strickland*.  Accordingly, this portion of ground 8 is

11  denied.

12          Next, petitioner contends that his appellate counsel was ineffective for failing to

13  federalize several claims on direct appeal, despite the fact that federal authority existed and that the

14  prosecution cited to such authority in its answering brief (ECF #5 at 17).  Respondents allege that no

15  *Strickland* violation occurred because none of the issues raised were "dead bang winners" and thus the

16  Nevada Supreme Court's affirmance of the district court's denial of this claim was not objectively

17  unreasonable (ECF #15 at 17-18).

18          In affirming the denial of this ground, the Nevada Supreme Court stated that petitioner

19  had failed to demonstrate that the results of his direct appeal would have been different if counsel had

20  federalized the claims, and therefore, he did not show that he was prejudiced by appellate counsel's

21  performance (ex. 23 at 8-9).

22          The Nevada Supreme Court cited to and applied the correct federal standard for

23  ineffective assistance of appellate counsel claims, *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983).

24  (Exhibit 66, at p. 7, n. 12).  The factual findings of the state court are presumed correct. 28 U .S.C. §

25  2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

26  to, or involved an unreasonable application of, clearly established federal law, as determined by the

1   United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

2   in light of the evidence presented in the state court proceeding.  Accordingly, ground 8 is denied in its

3   entirety.

4   **H.  Ground Ten**

5          Petitioner claims that NRS 178.562, which permits indictment after a failed attempt to

6   charge by complaint and information, is unconstitutional and violated his due process rights under the

7   Fifth, Sixth and Fourteenth Amendments (ECF #5 at 18).  Respondents argue that this ground is simply

8   a disagreement with a state court applying state law and should be denied (ECF #15 at 18-19).

9          The relevant version of NRS 178.562 stated:

10          Dismissal or discharge as bar to another prosecution.

11          1.  Except as provided in NRS 174.085, an order for the dismissal of the action, as
        provided in NRS 178.554 and 178.556, is a bar to another prosecution for the same
12          offense.

13          2.  The discharge of a person accused upon preliminary examination is a bar to another
        complaint against him for the same offense, but it does not bar the finding of an
14          indictment or filing of an information.

15          The Nevada Supreme Court affirmed the denial of this ground, observing that it has

16   previously upheld the statute as constitutional (ex. 11at 9, citing *State of Nevada v. District Court*, 964

17   P.2d 48 (1998)).  The Fifth Amendment right to indictment by grand jury is not applicable to the states.

18   *Rose v. Mitchell*, 443 U.S. 545, 557 n.7 (1979); *Hurtado v. California*, 110 U.S. 516, 534-535 (1884).

19   Moreover, the Fifth Amendment guarantee against double jeopardy does not attach until a jury is

20   empaneled and sworn.  *Serfass v. U.S.* 420 U.S. 377, 391 (1975) (*see also U.S. ex rel. Rutz v. Levy*, 268

21   U.S. 390, 393 (1925) ("Under state law it has been uniformly held that the discharge of an accused

22   person upon a preliminary examination for want of probable cause constitutes no bar to a subsequent

23   preliminary examination before another magistrate.  Such an examination is not a trial in any sense and

24   does not operate to put the defendant in jeopardy.").

25          The Nevada Supreme Court has held that the State's pursuit of an indictment after the

26   dismissal of a complaint does not violate state law.  Petitioner cites generally to the proposition that a

federal court will review questions of state evidence law if it appears that the admission violated fundamental due process and the right to a fair trial in support of their contention that permitting the State "two bites at the apple" in an attempt to bring charges against petitioner violated his fundamental right to due process (ECF #19 at 31) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962). This court rejects respondents' argument that this ground–which challenges the constitutionality of the state statute–is simply a disagreement with a state court applying state law. However, the Nevada Supreme Court has considered and upheld the constitutionality of the statute in question. Neither party here argues that either the Ninth Circuit or the United States Supreme Court has considered the constitutionality of this or an analogous state provision, and this court has found no such decision. Thus, the Nevada Supreme Court's affirmance of the denial of this ground is not contrary to clearly established federal law as determined by the United States Supreme Court. Accordingly, ground 10 is denied, and the petition is denied in its entirety.

## V. Certificate of Appealability

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

1    **VI. Conclusion**

2            **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF #5)

3    is **DENIED IN ITS ENTIRETY**.

4            **IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT**

5    accordingly and close this case.

6            **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

7    **APPEALABILITY.**

8            **IT IS FURTHER ORDERED** that petitioner's motion for decision (ECF #21) is
     **DENIED** as moot.

9

10           Dated this 13th day of March, 2013.

11

12

13           _____
             UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26